**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**MILLSAPS COLLEGE**                                                                                      **PLAINTIFF**

**VS.**                                                           **CIVIL ACTION NO.: 3:16CV193- CWR-LRA**

**LEXINGTON INSURANCE COMPANY**                                                        **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**
**GRANTING IN PART AND DENYING IN PART**
**DEFENDANT'S MOTION TO COMPEL**

Millsaps College has brought this suit for damages to buildings on its campus as a result of a hailstorm that occurred on March 18, 2013. Lexington Insurance was an insurer of those buildings. Millsaps claims that it has suffered actual damages in excess of six million dollars because of that hailstorm and claims that Lexington has inadequately investigated its claim and refused to pay for covered losses and damages. Millsaps seeks actual damages, consequential and incidental damages, interest and punitive damages against Lexington. Lexington asserts that it and its consultants visited the Millsaps campus several times to inspect the damages and engaged in multiple settlement discussions with Millsaps. According to Lexington, Millsaps has been fully indemnified under the policy in the amount of $1,946,840.72.

After the hailstorm, but before this suit was filed, Millsaps began consulting with W. G. Yates & Sons Construction Company and CMR Construction & Roofing, LLC about the damage to its buildings. Since this lawsuit was filed, Millsaps designated Steven M. Soule of CMR Construction and Paul Musick and Clint Bledsoe of Yates Construction as expert witnesses in this matter. This Motion concerns subpoenas that were issued to Yates Construction and CMR Roofing. Some of the documents sought are emails between Millsaps, the consultants, and Millsaps's legal counsel, others are between Millsaps and its consultants, some are emails

between the consultants, some are the consultants' internal emails, and one is an email between Millsaps and its legal counsel. Lexington argues that these documents are discoverable pursuant to Fed. R. Civ. P. 26(b)(4)(C), while Millsaps objects to production of these documents under the attorney/client and work product privileges. Millsaps provided a privilege log; however, the privilege claimed for every document listed is the same: "Millsaps claims a privilege and protection from discovery based on the work product doctrine, Fed. R. Civ. P. 26(b)(3), 26(b)(4) (including subparts A through D) and the attorney/client privilege. Millsaps specifically refers to and incorporates Millsaps' Response and Objections to Subpoenas filed on August 26, 2016 [Dkt. #16]. The Response and Objections provide no further illumination beyond the boilerplate language.

The general principles applicable to these documents are these:

The Attorney/client Privilege – for purposes of this diversity case, Mississippi law provides the parameters of this privilege and protects:

> [A]ny confidential communication made to facilitate professional legal services to the client:
>
> (1) between the client or the client's representative and client's lawyer or the lawyer's representative;
>
> (2) between the client's lawyer and the lawyer's representative;
>
> (3) by the client, the client's representative, the client's lawyer, or the lawyer's representative to another or that lawyer's representative, if:
>
>    (A) the other lawyer represents another party in a pending case; and
>
>    (B) the communication concerns a matter of common interest;
>
> (4) between the client's representatives or between the client and a client representative; or
>
> (5) among lawyers and their representatives representing the same client.

Miss. R. Evid. 502(b). Confidential communications are those "not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." Miss. R. Evid. 502(a)(5). A client's representative is one authorized to obtain legal services on behalf of the client or to act on the advice rendered or an employee with information that the lawyer needs to render legal services. A lawyer's representative is one employed by the lawyer to assist in rendering legal services.

Federal law governs the analysis of the work product doctrine in diversity cases. *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991). That doctrine is codified in Fed. R. Civ. P. 26(b)(3), and it protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer or agent)." Experts are not specifically included in that protection. As one court noted, "The phrase 'party or its representatives,' implies agency, and each of the six listed examples connotes someone acting in either an agency or fiduciary capacity for the 'party or its representative." *Republic of Ecuador v. For Issuance of a Subpoena Under 28 U.S.C. Sec. 1782(a)*, 735 F.3d 1179, 1184 (10th Cir. 2013). An expert would not, ordinarily, have that authority. *Id*; *see also Republic of Ecuador v. Mackay*, 742 F.3d 860, 871 (9th Cir. 2014) (general work product doctrine does not extend to testifying experts); *Republic of Ecuador v. Hinchee*, 741 F.3d 1185, 1192 (11th Cir. 2013) (same); *Davita Healthcare Partners, Inc. v. United States,* 128 Fed. Cl. 584, 588 (Fed. Cl. 2016). Moreover, there is no protection for communications among a testifying expert and non-attorney employees of the party or other testifying experts. *In re Application of Republic of Ecuador*, 280 F.R.D. 506, 514 (N.D. Cal. 2012).

A party is not entitled to discover facts known or opinions held by a non-testifying expert. Fed. R. Civ. P. 26(b)(4)(D). In the case of a testifying expert, however, communications between a party's attorney and its expert are protected, unless the communications relate to the expert's compensation, identify facts or data that the attorney provided and the expert considered in forming his opinion, or identify the attorney's assumptions that were relied upon by the expert. Fed. R. Civ. P. 26(b)(4)(C). Millsaps argues that even those communications could be withheld under another claim of privilege, relying on this sentence, "The rule does not exclude protection under other doctrines, such as privilege or independent development of the work-product doctrine." The Court disagrees.

The paragraph in which this sentence appears deals primarily with the protection granted to attorney communications with testifying experts. Immediately preceding the sentence quoted by Millsaps, the subject changes. "The rule does not itself protect communications between counsel and other expert witnesses, such as those for whom disclosure is required under Rule 26(a)(2)(C)." The Court is of the opinion that the sentence quoted by Millsaps, which immediately follows, explains that such communications may be protected by other means than the Rule. Other courts interpreting the more recent amendments to the Rule generally agree with this analysis. *Luminara Worldwide, LLC v. Liown Electronics Co. Ltd.,* No., Civil No. 14-3103, 2016 WL 6914995 at *6 (D. Minn. May 18, 2016); *Powerweb Energy, Inc. v. Hubbell Lighting, Inc.*, No. 3:12CV220, 2014 WL 655206 at *2 (D. Conn. Feb. 20, 2014); *PACT XPP Technologies, AG v. Xilinx, Inc.*, No. 2:07CV563, 2012 WL 1205855, at *4 (E.D. Tex. Apr. 11, 2012) ("Although the amended rule explicitly provides these protections for expert witnesses who submit a written expert report under Rule 26(a)(2)(B), the Rules contemplate that privileges

4

and protections may be available to protect communications with other types of expert witnesses . . . .");

This conclusion is further bolstered by the statement that closely follows: "Rules 26(b)(4)(B) and (C) *do not impede* discovery about the opinions to be offered by the expert or the development, foundation, or basis of those opinions." (Emphasis added.)  Millsaps's interpretation would make this provision nearly useless, as most communications regarding the basis for the expert's opinion could arguably be classified as work product.  An opinion from this Court, issued prior to the 2010 amendments, further explains why this interpretation is appropriate:

> The rationale behind the "bright line" rule also includes several policy concerns. The most significant of these policy concerns is that, in today's litigious society where it has become common for a lawyer to bring in a "hired gun" to give an expert opinion that supports the lawyer's theory of the case, the opposing party and the jury are entitled to know if the lawyer's opinion or theory of the case impacted or influenced the expert's opinion. This Court agrees that this concern is sufficient to override the work product doctrine. In order to guarantee effective cross-examination, and to guarantee that the jury has all information relevant to assessing the credibility of experts, lawyers should not be allowed to influence or manipulate the experts' opinions then hide behind work product. As Magistrate Judge Alfred G. Nicols, Jr. stated in his Order of May 30, 2000:
>
>> when an attorney hires an expert both the expert's compensation and his "marching orders" can be discovered and the expert cross-examined thereon. If the lawyer's "marching orders" are reasonable and fair, the lawyer and his client have little to fear. If the orders are in the nature of telling the expert what he is being paid to conclude, appropriate discovery and cross-examination thereon should be the consequence. Such a ruling is most consistent with an effort to keep expert opinion testimony fair, reliable and within the bounds of reason.

*TV-3, Inc. v. Royal Ins. Co. of America*, 194 F.R.D. 585, 589 (S.D. Miss. 2000).

The party claiming privilege has the burden of establishing the basis for the claim. *Hodges, Grant & Kaufmann v. United States*, 768 F.2d 719, 721 (5th Cir. 1985).  Once the privilege has been established, the party seeking the discovery bears the burden to prove any

5

exceptions. *E.E.O.C. v. BDO USA, L.L.P.*, 856 F. 3d 356, 362 (5th Cir. 2017). The inquiry into whether a privilege applies is highly fact-specific, and any ambiguities should be construed against its applicability. *Id*. With regard to material sent to testifying experts, the term "considered" should be interpreted broadly to require "disclosure of all information a testifying expert 'generates, reviews, reflects upon, reads, and/or uses in connection with the formulation of his opinions, even if such information is ultimately rejected.'" *In re Benicar (Olmesartan Products Liability Litigation*, 319 F.R.D. 139, 141 (D. N.J. 2017) (quoting *Synthes Spine Co., L.P. v. Walden*, 232 F.R.D. 460, 463 (E.D. Pa. 2005)).

The documents in question consists of strings of emails that were forwarded to various people involved in this matter. In some instances, those forwarded strings are clipped together, with potentially privileged communications clipped to communications that are clearly not privileged. The fact that non-privileged communications were transmitted to counsel does not make the entire package privileged; each communication must be analyzed on its own. *Id*. at 363-64; *N.L.R.B. v. Interbake Foods, LLC*, 637 F.3d 492, 503 (4th Cir. 2011). There is no presumption that sending the communication to counsel confers a privilege on it. *BDO*, 856 F.3d at 365. Describing a document as describing "trial tactics," "strategy of counsel" will not confer the privilege, nor will the assertion that a document was prepared at counsel's direction. *Id*. Neither the attorney/client privilege nor the work-product doctrine can protect a communication that has not been shown by Millsaps to fall specifically within its ambit.

Millsaps provided the Court with a list of names that appear in the documents presented for *in camera* review and the role that each of these persons played in the activities described in the email. These include Millsaps's lawyers and employees, employees of Yates Construction, employees of CMR, and a representative of Arthur J. Gallagher & Co., described as Millsaps's

consulting/trial engineering expert. Obviously, these people participated in some manner in the preparation of Millsaps's case. With respect to EIIA, Millsaps claims that it is "a named insured as a member institution." Not appearing in this list are representatives of Lexington; however, from Millsaps's Complaint, the Court understands that Cunningham Lindsey was retained to handle Millsaps's claim on Lexington's behalf, and Dave Reger is an employee of Cunningham Lindsey. Ultimately, Tom Sheets, a colleague of Reger's, also worked on the claim. Additionally, Lexington hired Halliwell Engineering and Young & Associates to adjust the claim. AIG is the parent company of Lexington.

As stated earlier, Millsaps has designated Steven Soule of CMR, Paul Musick of Yates Construction, and Clint Bledsoe, also from Yates, as expert witnesses. Additionally, Millsaps has designated Tony Childress, of Childress Engineering Services. Childress stated, in his report, that he reviewed "the supplied damage assessment reports prepared by others, photographs, repair estimates as well as other provided data." [Doc. #27-2, p. 3]. Soule, in his report, stated, "I have been provided with the estimate reports prepared by Young & Associates on behalf of Lexington Insurance and the descriptions of work listed in those reports . . . ." [Doc. #27-7, p. 1]. Musick and Bledsoe submitted a joint report, in which they stated, "[W]e have reviewed the reports provided by Lexington Insurance Company of their experts Halliwell Engineering & Associates, Young & Associates, as well as the analysis done by Cunningham & Lindsey." [Doc. #27-9, p. 1]. They also consulted with Scott Kilby, as estimator.

With these facts and legal principles in mind, particularly Millsaps' burden to prove privilege, the Court has conducted an *in camera* review of the documents at issue, comparing them to Millsaps's privilege logs, and the rulings follow:

**CMR Document Production**

| Bates Nos. | Ruling |
|---|---|
| 8056, 8057-61, 8062-66, 8067-8101, 8136-38 8139-41, 8998-9003, 9574-75, 10456-60, 10461-656, 11200-01, 11271-310, 11712-14, 12077 | Millsaps claims that these documents are not relevant to this lawsuit and that they should not have been produced. Lexington does not object to this designation; therefore, these documents need not be produced. |
| 9343-44 | These pages contain three emails. The first is from Wilber Evans of Lexington to EIIA personnel. It is discoverable as the basis for the expert opinions of the CMR and Yates personnel. The second email is merely a transmittal of the first email from an EIIA employee to a Millsaps employee. It is discoverable. The third email is from Millsaps's in-house counsel, Terri Hudson, to two of Millsaps' attorneys, Michael Gwin and Clifford Ammons. The email was copied to Clint Bledsoe and Paul Musick, employees of Yates who were ultimately designated as experts, and Steven M. Soule, an employee of CMR who was ultimately designated as an expert. It was also transmitted to Scott Mesler, another employee of CMR. For purposes of applying the attorney/client privilege, Hudson could be considered a representative; however, Millsaps has not established that the then-unnamed experts and their employers would fall within that category. The broader work product doctrine could apply, however, since the information in the memo could have been considered by the expert witnesses in forming their opinions, it is not privileged. |
| 9494-97 | These documents contain several emails between Scott Mesler, of CMR, and John Crawford, of Crawford Engineering. Neither has been designated as an expert. The string was sent from Mesler to Steve Soule, of CMR, who has been designated as expert. The attorney/client privilege claimed by Millsaps does not apply. However, the subject matter of the emails suggests that they were prepared for trial by Millsaps' consultants and are not related to their expert testimony; therefore, they are protected by the work-product doctrine and need not be produced. |
| 9558-59 | These pages contain two emails. The first is from Terri Hudson to Bledsoe, Musick, Ammons and Gwin, and it does not appear to be related to the experts' opinions. Therefore, it is protected as work-product and need not be produced. The second email merely asks for available dates to meet with Lexington's representatives, and it is not protected. |

| | |
|---|---|
| 9572 | This document contains an email from Hudson to Soule, Bledsoe, Messler, Gwin and Michael Switzer, of Millsaps, from Hudson, regarding experts. The identity of all of the recipients precludes a finding of attorney/client privilege; however, the document appears to be work product and need not be produced. |
| 9710-11 | These documents are listed on Millsaps's privilege log; however, the documents are not on the list of those submitted for *in camera* review, and the documents do not appear in the submitted documents. |
| 10376 | This document contains an email from Bledsoe to Soule and Mesler. It relates to the damage estimates and could have been considered by the experts in forming their testimony; therefore, the document is not protected and should be produced. |
| 10657-60 | These documents contain the same email string included in #9494-97, along with a response from Soule to Mesler. The response is protected under the work-product doctrine and need not be produced. |
| 10663-64 | These documents contain emails from Soule and Musick to Hudson, Bledsoe, Ammons, Gwin and Musick. They are protected by the work-product doctrine and need not be produced. |
| 10665-67 | These emails are among Soule, Hudson, Bledsoe, Mesler, Musick, Ammons, Gwin, and Tom Sheets, who is not identified on the list of names in emails, but appears to be an employee of Lexington. They primarily report on conversations with Lexington's representatives. These documents are not protected and should be produced. |
| 10985-89 | These documents between Hudson, Soule, Bledsoe and Mesler are not protected and should be produced. |
| 11177-99 | These documents are listed on Millsaps's privilege log; however, the documents are not on the list of those submitted for *in camera* review, and the documents do not appear in the submitted documents. |
| 11203-10 | These documents contain emails between from a Lexington employee to EIIA personnel, and then a transmission of that correspondence to Hudson. Those emails are not protected and should be produced. The emails that follow among Hudson, Soule, Ammons, Bledsoe, Mesler, Musick and Gwin relate to damage calculations that could have been relied upon by the expert witnesses and are not protected. |
| 11260-61 | These documents contain the same emails as #9558-59, and the ruling is the same. The last email is new and is further discussion of availability. That email is not protected and should be produced. |

9

| | |
|---|---|
| 11266-70 | These emails describe a property inspection that was conducted with a third party adjuster, as well as an email from Ross Hail, who appears to be an employee of CMR.  These documents are not protected and should be produced. |
| 11271-95 | These documents contain emails between CMR employees, Hudson, and Gwin regarding trial preparation.  They are protected by the work-product doctrine and need not be produced. |
| 11712-14 | These documents are listed on Millsaps's privilege log; however, the documents are not on the list of those submitted for *in camera* review, and the documents do not appear in the submitted documents. |
| 11801 | This document contains emails from Bledsoe to Soule regarding damage calculations and are not protected. |
| 11814-15 | These documents contain a response to the emails contained in #9558-59.  The response is not privileged; the prior ruling applies to the remainder of the documents. |
| 11816-7, 11873 | These documents are listed on Millsaps's privilege log; however, the documents are not on the list of those submitted for *in camera* review, and the documents do not appear in the submitted documents. |

### **Yates Document Production**

| | |
|---|---|
| 0168-69 | These documents contain an email from Hudson to Ammons and Gwin that contains detail regarding Millsaps's claim for damages.  While it may have been considered by the experts in preparing their testimony, other statements contained therein are protected by the attorney/client privilege and the email need not be produced. |
| 0329 | These are emails between Hudson and Bledsoe asking for information for Gwin.  They are protected by the attorney/client privilege and need not be produced. |
| 0388-92 | This is a letter from Hudson to Siri Gadbois at EIIA.  The claim of privilege is contingent on the relationship of Millsaps and EIIA.  It appears that EIIA is an "insurer" within the meaning of  Rule 26(b)(3), so the work product doctrine would apply. |
| 0380-81 | This is a memo from Hudson to CMR personnel and Ammons. While it may have been considered by the experts in preparing their testimony, other statements contained therein are protected as work product and by the attorney/client privilege and the email need not be produced. |

| | |
|---|---|
| 0382-87 | These are notes that appear to reflect a damage calculation. It is not clear whether they are part of the preceding memo. If so, then they are protected; if not, in the absence of any other identifying marks, they should be produced. |
| 0670-72 | This appears to be a cover letter for a transmission of other data and is not privileged. |
| 0668-69 | This is another cover letter and is not privileged. |
| 0667 | This a response to the previous transmission and is not privileged. |
| 0666 | This email from Hudson to Soule, Mesler, and Bledsoe contains the reasoning for Millsaps's damage calculations. Because it could have been considered by the experts, it should be produced. |
| 0664-65 | This email transmits #0666 to counsel with additional reasoning. It should be produced. |
| 0718-21 | This email is the transmittal of the final estimate from Bledsoe to Hudson and Musick and then to counsel. While it may have been considered by the experts in preparing their testimony, other statements contained therein are protected as work product or by the attorney/client privilege and the email need not be produced. |
| 0793-96 | These documents appear to duplicate an email from Moriarty to Hudson, forwarded to Bledsoe. While it may have been considered by the experts in preparing their testimony, other statements contained therein are protected as work product and the email need not be produced, under the assumption that EIIA is an insurer. |
| 0800-01 | This package contains the email from Moriarty and the response from Gwin to Hudson. It is protected under the attorney/client privilege and is also work product. |
| 0802-07 | This package contains the same documents described in 0793-96, with Bledsoe's response. They are protected as work product. |
| 0827 | This is an email from David Reger to Bledsoe. Reger is an agent of Lexington, and the email is not privileged. |
| 0826 | This is an email transmitting Reger's email to Bledsoe, Musick and Gwin. It contains information that is protected as work product. |

| | |
|---|---|
| 0825 | This email is an explanation of the damage calculation from Bledsoe to Hudson, Musick and Gwin. Because it could have been considered by the experts, it is not protected. |
| 0823-24 | Same as #0827. |
| 0822 | Same as #0826. |
| 0821 | Same as #0825. |
| 0819-20 | Same as #0827. |
| 0817-18 | Same as #0825. |
| 0815-16 | Same as #0823-24. |
| 0813-14 | Same as #0825. |
| 0850-51 | Same as #0826. |
| 0848-49 | Same as #0823-24. |
| 0847 | Same as #0826. |
| 0845-46 | Same as #0823-24. |
| 0844 | Same as #0826. |
| 0842-43 | Same as #0823-24. |
| 0841 | Same as #0826. |
| 0839-40 | Same as #0823-24. |
| 0838 | Same as #0826. |
| 0836-37 | Same as #0826. |
| 0835 | Same as #0826. |
| 0832-34 | Same as #0826. |
| 0874-75 | Same as #0827. |
| 0884-85 | These are two copies of a cover letter from Hudson to Moriarty and Morency. They are not privileged. |

| | |
|---|---|
| 0886 | This is an email from Hudson to Musick, Bledsoe and Ammons. It is protected by the attorney/client privilege and is work product. |
| 0898-99 | Same as #0380-81. |
| 0900 | This an email from Hudson to Kilby, Musick and Bledsoe regarding damage calculations. While it may have been considered by the experts in preparing their testimony, other statements contained therein are protected as work product and the email need not be produced. |
| 0938 | This is an email from Elfert, at Arthur Gallagher to Ammons, with a copy to Musick, Bledsoe, and Hudson. It is merely a transmittal letter, and, while the underlying document might be privileged, it is not included here, and this document is not privileged, as it does not contain confidential information. |
| 0993-94 | This package contains an email from Moriarty to Hudson, Hudson's response, and a transmittal to Musick, Bledsoe, Elfert and Ammons, with comments. While it may have been considered by the experts in preparing their testimony, other statements contained therein are protected by the attorney/client privilege and as work product, and the email need not be produced, assuming that EIIA is a representative of Millsaps |
| 0989-90 | Same as #0993-94, with a response from Musick. Same ruling as above. |
| 0986-88 | Same as #0993-94, with another email from Moriarty, which was forwarded to Musick, Bledsoe, Elfert, and Ammons, with comments. Same ruling as above. |
| 0982-85 | Same as #0986-88, with response from Bledsoe about availability. Bledsoe's response is not protected; however, the remainder of the emails in these pages are protected, as described above. |
| 0978-81 | Same as #0986-88, with response from Musick about availability. Musick's response is not protected; however, the remainder of the emails in these pages are protected, as described above. |
| 0974-77 | Same as #0986-88, with response from Hudson about meeting. Hudson's response is not protected; however, the remainder of the emails in these pages are protected, as described above. |
| 0970-73 | Same as 0974-77 with response from Musick, which is not privileged. The remainder of the emails in these pages are protected, as described above. |

| | |
|---|---|
| 0966-69 | Same as #0970-73, with response from Elfert, which is not privileged. The remainder of the emails in these pages are protected, as described above. |
| 0962-65 | Same as #0970-73, with response from Hudson, which is not privileged. The remainder of the emails in these pages are protected, as described above. |
| 0958-61 | Same as #970-73, with response from Musick, which is not privileged. The remainder of the emails in these pages are protected, as described above. |
| 0950-53 | Same as #970-73, with various emails on setting a meeting, which are not privileged. The remainder of the emails in these pages are protected, as described above. |
| 0945-49 | Same as #970-73, but distributed to other Yates personnel. The emails confirming the meeting are not privileged; the remainder are protected. |
| 0940-44 | Appear to duplicate 0945-49. |
| 0995-96 | These are cover emails for a transmittal that are not protected. |
| 1004 | This is an email from Hudson to Elfert, Bledsoe, and Musick that is protected work product. |
| 1009-12 | These are primarily emails related to the transmittal of a memo to Lexington; however, because there are some statements in them that relate to trial strategy, they are protected work product. |
| 1052-55 | The email from Mesler to Bledsoe is protected work product. The emails forwarding this and scheduling a meeting are not protected. |
| 1048-51 | Same as 1052-55, with another scheduling email, which is not protected. |
| 1043-47 | Same as 1052-55, but with an email from Elfert to Hudson, Bledsoe and Musick, which is protected work product. |
| 1038-42 | Same as 1043-47, with a response from Hudson that is not protected. |
| 1033-37 | Same as 1038-42, with a response from Elfert that is not protected. |
| 1101-03 | These emails are primarily cover messages for the transmittal of a cost summary page. There are statements in them that could be construed as trial preparation strategy, so they are protected as work product. |

| | |
|---|---|
| 1097-1100 | Same as 1101-03, but with a response from Elfert that is protected work product. |
| 1110-13 | This is an exchange of emails between Hudson, Bledsoe, Musick and Elfert concerning strategy for dealing with Lexington, and they are protected as work product. |
| 1114-17 | Same as 1110-13. |
| 1118-21 | Same as 1110-13, but without the last response. |
| 1126-29 | Same as 1110-13, but without the transmittal emails and responses. |

IT IS, THEREFORE, ORDERED that the Motion to Compel [53] filed by Defendant is granted in part and denied in part, as set forth herein. The documents determined by the Court to be protected by a privilege need not be produced. The remaining documents should be delivered to Lexington on or before August 8, 2017.

IT IS SO ORDERED, this the 24th day of July, 2017.

\_S/ Linda R. Anderson_____
UNITED STATES MAGISTRATE JUDGE